Austin B. Egan (13203)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: 801.758.7604
Fax: 801.893.3573
austin@stavroslaw.com
*Attorney for Plaintiff Lori Stewart*

**IN THE UNITED STATES DISTRICT COURT IN AND FOR
THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| LORI STEWART,<br><br>　　Plaintiff,<br><br>vs.<br><br>MOUNTAINLAND TECHNICAL COLLEGE,<br><br>　　Defendant. | **COMPLAINT**<br><br>Case No. 2:20-cv-00086-JNP<br><br>Judge Jill N. Parrish |

Plaintiff Lori Stewart, by and through her attorney of record, brings this Complaint against Defendant Mountainland Technical College, and alleges the following:

**PRELIMINARY STATEMENT**

This is an action alleging discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA").

**PARTIES, JURISDICTION AND VENUE**

1.　　Plaintiff Lori Stewart ("Stewart") is a resident of Utah County, State of Utah.

2.　　Defendant Mountainland Technical College ("MTEC") is located in Utah County, State of Utah, and is part of the state's system of higher education.

1

3. Stewart exhausted her administrative remedies prior to filing this action, having filed a timely charge with the Utah Antidiscrimination and Labor Division ("UALD") and the Equal Employment Opportunity Commission ("EEOC") on or about March 1, 2019, and an amended charge on or about March 5, 2019. On or about December 26, 2019, Stewart received a notice of right to sue from the EEOC.

4. This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(4).

5. The employment practices alleged to be unlawful were committed in Utah County, State of Utah. Accordingly, venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 125.

## GENERAL ALLEGATIONS

**Background**

6. MTEC is an accredited technical college that provides education and training in a variety of occupations. MTEC is a "employer" as that term is defined in the ADA, 42 U.S.C. § 12111.

7. Stewart was hired by MTEC in 2003 and worked as the Program Director for its apprenticeship program. Stewart's duties and responsibilities included planning, directing, and coordinating students, staff, and instructors to facilitate higher education and training. At all times relevant to this action, Stewart was an "employee" as that term is defined in the ADA, 42 U.S.C. § 12111.

8. Stewart suffers from a medical condition known as "blepharospasm," which causes involuntary muscle spasms of her eyelids, and causes her eyes to shut uncontrollably. The condition also causes pain, fatigue, and hypersensitivity to certain types of light.

9. Stewart's Blepharospasm substantially limits Stewart's major life activities, including her ability to see, concentrate, and communicate.

10. Stewart's blepharospasm (and associated symptoms) constitutes a disability, as that term is defined in the ADA, 42 U.S.C. § 12102.

11. Despite Stewart's disability, at all times relevant to this action, she was fully qualified to perform all essential functions of her employment with MTEC, with or without a workplace accommodation.

**Stewart's Requests for Accommodation**

12. During her employment with MTEC, Stewart notified MTEC of her disability and made multiple requests for workplace accommodations for her disability. Her accommodation requests included, but were not limited to:

- July 26, 2018: Stewart requested reduced lighting in her office, and reduced lighting or a different type of lighting in the hallway outside her office. Stewart essentially requested changing the lighting so that it would not aggravate the symptoms associated with her blepharospasm.

- August 2018: On two occasions, MTEC employees (an electrical teacher and facilities director) discussed what kind of lighting would work to accommodate Stewart's disability. The electrical teacher made it clear that Stewart needed lower kelvin lights in her office and in the hallway outside her office. On or about August 29, 2018, Stewart met with Vice President Holly Peterson, told her that the lights in the hallway (outside her office) aggravated her eyes, and asked whether she could turn the lights off in the hallway.

- September 11, 2018: Stewart requested to change out the hallway lights and offered to pay for that change.

- September 18, 2018: Stewart repeated her request to turn off some of the lighting in the hallway and in front of her office door.

- September 20, 2018: Stewart provided MTEC with a paper describing her disability and how it can cause impaired vision. Stewart repeated her request for different lighting in the hallway.

- September 25, 2018: Stewart provided MTEC with an article providing additional information on her disability and her accommodation requests. The article made it clear that blue (kelvin) lighting was hurting her eyes. Stewart again requested that that MTEC switch the hall lighting to a lower kelvin.

- November 12, 2018: Stewart again requested that the hallway lights be periodically turned off.

- November 13, 2018: Stewart repeated her requests for different lighting and to leave the lights off, and reiterated that the lights were aggravating her symptoms.

- November 16, 2018: Stewart sent an email to human resources and asked whether MTEC had an official ADA request form. (MTEC never responded to this email.)

- On several occasions up until November 19, 2018, Stewart periodically requested and was allowed to work from home.

- November 26, 2018: Stewart again requested that the lights inside her office and directly outside her office be changed so the lighting would not aggravate or trigger her symptoms.

- November 28, 2018: Stewart repeated her requests for different lighting and to leave the lights off.

- December 6, 2018: Stewart's legal counsel sent MTEC a letter again presenting the previous accommodation requests.

- December 7, 2019: Stewart spoke with Vice President Peterson and again requested different lighting in the hall.

- December 9, 2018: Stewart again requested that the lights inside her office and directly outside her office be changed so the lighting would not aggravate or trigger her symptoms.

13. None of Stewart's accommodation requests would have imposed an undue hardship on MTEC, as that term is defined in the ADA, 42 U.S.C. § 12111 and 29 CFR § 1630.2(p).

14. Stewart engaged in other protected activities under the ADA. Her legal counsel sent an email to MTEC on or about December 17, 2018, raising concerns of unlawful discrimination.

**MTEC's Responses to Stewart's Requests**

15. Once Stewart notified MTEC of her disability and made her accommodation requests, MTEC's duty to engage Stewart in an interactive process—pursuant to the ADA—was triggered. MTEC's duty to engage in an interactive process involved communicating with Stewart about her disability and to determine what accommodations are reasonable and necessary.

16. MTEC miserably failed to engage Stewart in an interactive process and responded to her accommodation requests with overt hostility and adverse employment actions.

17. MTEC failed to timely respond to Stewart's requests, and its failure to timely respond amounts to a denial of Stewart's accommodation requests.

18. MTEC did not grant Stewart's requests for accommodation and did not engage her in an interactive process.

19. In July 2018, MTEC installed a dimmer in Stewart's office. In August 2018, MTEC installed an undermount light and blind in Stewart's office. Those items were insufficient to prevent the aggravations to Stewart's eyes. Importantly, MTEC did not change out the lights

in Stewart's office or the hallway as she had requested. Eventually, Stewart brought in her own floor lamp to light her office, the problematic lighting in the hallway remained.

20.     In September 2018, MTEC installed a "film" in the hallway (which Stewart did not request), but that film did not solve the problem, and the film was later removed.

21.     MTEC was openly hostile to Stewart after it received her accommodation requests. For example, on or about December 7, 2018, Vice President Peterson told Stewart that she should "take disability and leave" MTEC.

22.     On or about August 28, 2018, MTEC demoted Stewart and changed her title from Program Directed to "Program Coordinator." Although Stewart's title was restored to "Director," MTEC's discriminatory and retaliatory intent was clear.

23.     On or about November 11, 2018, MTEC made false, inaccurate, and disparaging comments about Stewart in her semi-annual performance review. MTEC also instructed Stewart to complete assignments before there were due, knowing that she would not be able to complete the assignments early considering her substantial workload. Essentially, MTEC was deliberately imposing deadlines it knew Stewart could not meet, and was deliberately setting Stewart up to fail.

24.     On or about November 19, 2018, MTEC notified Stewart that she was no longer allowed to periodically work from home, but nevertheless allowed several of Stewart's comparator coworkers to work for home. Additionally, for the first time in five years, Stewart's supervisor requested that Stewart begin reporting her "office hours" to him. This was yet another act showing MTEC's discriminatory and retaliatory intent.

25. On or about December 14, 2018, MTEC notified Stewart that she was required to submit "detailed reports" of her work schedule every week. This punitive restriction on her working conditions was not imposed on her comparator employees. Also or about December 14, 2018, MTEC deliberately assigned Stewart a burdensome workload that was beyond the scope of her job duties, while also demanding that she reply to all communications within 48 hours. Again, MTEC was deliberately assigning Stewart an impossible workload with insufficient support staff in what was a flagrant attempt to set her up for failure.

26. By the end of 2018, MTEC had failed to engage Stewart in an interactive process, it had denied her accommodation requests, and it had engaged in a pattern of behavior that revealed MTEC's discriminatory and retaliatory intent directed to Stewart because of her disability, and/or because she had requested accommodations for her disability.

**Stewart's UALD Filing and MTEC's Termination of Her Employment**

27. By letter dated January 23, 2019, Stewart's counsel sent a letter to MTEC notifying it that Stewart had filed her request for a charge of discrimination, failure to accommodate, harassment, and retaliation in violation of the ADA.

28. In this same letter, Stewart's counsel notified MTEC that the UALD was in the process of preparing a formal charge, and that it would be unlawful for MTEC to retaliate against Stewart.

29. On February 28, 2019, Stewart's counsel sent MTEC an email wherein he repeated Stewart's request to turn off or dim the lights outside her office. Stewart's counsel attached Stewart's signed and notarized UALD charge to the email.

30. Later that same day (February 28), MTEC terminated Stewart's employment.

## FIRST CAUSE OF ACTION
### Discrimination in Violation of the ADA

31. The preceding paragraphs are incorporated herein by reference.

32. The ADA prohibits discrimination against qualified individuals on the basis of a disability. The ADA imposes an obligation upon employers to accommodate the known disabilities of its employees.

33. At all times relevant hereto, MTEC was aware of Stewart's disability.

34. At all times relevant hereto, Stewart was a qualified individual with a disability. Stewart could perform the essential functions of her employment with or without a workplace accommodation.

35. MTEC's failure to engage Stewart in an interactive process and its denial of Stewart's accommodation requests constitutes discrimination in violation of the ADA, 42 U.S.C. § 12112(b).

36. MTEC terminated Stewart's employment because of her disabilities or because she had requested accommodations for her disabilities. Accordingly, MTEC's termination of Stewart's employment also constitutes discrimination in violation of the ADA.

37. MTEC applied standards of conduct and performance to Stewart that it did not apply to her non-disabled comparator employees, which serves as further evidence of discrimination in violation of the ADA.

38. MTEC's violations of the ADA have directly and proximately caused Stewart to suffer substantial past and future economic losses, including lost wages, lost employment benefits (including retirement benefits), and harm to Stewart's future earning capacity.

39. MTEC's violations of the ADA have also directly and proximately caused Stewart to suffer humiliation, pain, suffering, and emotional distress.

40. Stewart seeks recovery of her pecuniary and non-pecuniary damages in an amount to be determined at trial.

41. Stewart also seeks recovery of her reasonable attorney's fees and court costs.

42. MTEC's unlawful conduct was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of, Stewart's rights. Accordingly, Stewart requests an award of punitive damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### Retaliation Violation of the ADA

43. The preceding paragraphs are incorporated herein by reference.

44. The ADA, 42 U.S.C. § 12203, prohibits retaliation against an employee who has engaged in protected activity under the ADA.

45. Stewart engaged in protected activities by requesting workplace accommodations, by complaining that she was being subjected to unlawful discrimination and/or harassment, and by requesting and filing her UALD charge.

46. MTEC terminated Stewart's employment because she engaged in protected activities, in violation of the ADA.

47. MTEC's unlawful retaliation has directly and proximately caused Stewart to suffer substantial past and future economic losses, including lost wages.

48. MTEC's unlawful retaliation has also directly and proximately caused Stewart to suffer humiliation, pain, suffering and emotional distress.

49.     Stewart seeks recovery of her pecuniary and non-pecuniary damages in an amount to be determined at trial.

50.     Stewart also seeks recovery of her reasonable attorney's fees and court costs.

51.     MTEC's unlawful conduct was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of, Stewart's rights. Accordingly, Stewart requests an award of punitive damages in an amount to be proven at trial.

## JURY DEMAND

52.     Pursuant to Fed. R. Civ. P. 38, Stewart demands a trial by jury on all issues that are triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Stewart prays for judgment and relief against MTEC as follows:

(1)     A judgment awarding Stewart her lost wages, employee compensation, and other economic benefits lost as a result of MTEC's unlawful acts and omissions;

(2)     A judgment awarding Stewart compensatory and consequential damages in amount to be determined at trial, including damages for emotional distress, loss of enjoyment of life, and other non-pecuniary losses;

(3)     A judgment awarding Stewart punitive damages in an amount to be determined at trial;

(4)     A judgment awarding Stewart her reasonable attorney's fees and court costs, including expert witness fees;

(5)     A judgment awarding Stewart prejudgment and post-judgment interest at the highest lawful rates; and

(6)  A judgment awarding Stewart such further and additional legal or equitable relief as the Court deems appropriate.

Dated this 10th day of February, 2020.

STAVROS LAW P.C.

/s/ Austin B. Egan
Austin B. Egan
*Attorney for Lori Stewart*