FILED
2021 MAR 2 AM 9:54
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LORI STEWART,<br><br>　　　Plaintiff,<br><br>v.<br><br>MOUNTAINLAND TECHNICAL COLLEGE,<br><br>　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 20-cv-00086-JNP<br><br>District Judge Jill N. Parrish |

## INTRODUCTION

Before the court is a Motion to Dismiss (ECF No. 20) filed by Defendant Mountainland Technical College ("Mountainland" or "Defendant"). Plaintiff Lori Stewart ("Stewart" or "Plaintiff") filed an Amended Complaint (ECF No. 17) asserting four causes of action against Mountainland: (1) discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (2) retaliation in violation of the ADA; (3) discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*; and (4) retaliation in violation of the Rehabilitation Act. Mountainland moves to dismiss Stewart's first and second causes of action under Federal Rule of Civil Procedure 12(b)(1), arguing that it is entitled to immunity under the Eleventh Amendment and that this court therefore lacks subject-matter jurisdiction over Stewart's first two claims. For the reasons set forth herein, the court GRANTS Mountainland's Motion.

## BACKGROUND

Mountainland is an accredited, public technical college that belongs to the Utah System of Technical Colleges and the Utah System of Higher Education. Mountainland hired Stewart in 2003 as a Program Director for its apprenticeship program. Stewart suffers from blepharospasm, a condition that causes the muscles in her eyelids to involuntarily spasm and close her eyelids uncontrollably. "The condition also causes pain, fatigue, and hypersensitivity to certain types of light." ECF No. 2 at 8. Stewart asserts that she made various requests to Mountainland for accommodations related to her disability, including changing the kind of lights used in her office and in the hallways, which she alleges were met with hostility and ignored or denied. She ultimately involved legal counsel. Her counsel, after warning Mountainland that it would do so, filed a charge with the Utah Antidiscrimination and Labor Division ("UALD") and emailed a notarized copy to Mountainland on February 28, 2019. Later that same day, Mountainland terminated Stewart.

Stewart alleges that Mountainland terminated her employment due to her disability or because she requested accommodations for her disability in violation of both the ADA and Rehabilitation Act. She also alleges that her termination was a result of having filed a charge with the UALD, also in violation of the ADA and Rehabilitation Act. In the Motion before the court, Mountainland does not address the substance of these allegations, but rather asserts that it is immune, under the Eleventh Amendment, from suits brought under the ADA.[1] The court addresses Mountainland's Eleventh Amendment immunity argument in the sections to follow.

---

[1] It does not argue that it is immune to the claims brought under the Rehabilitation Act.

**LEGAL STANDARD**

"[O]nce effectively asserted[,] [Eleventh Amendment] immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1213 (10th Cir. 2019) (alterations in original) (citation omitted). Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action from federal court for lack of subject-matter jurisdiction. FED R. CIV. P. 12(b)(1). When a party moves to dismiss an action under Rule 12(b)(1), it "mount[s] either a facial or a factual attack. A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020) (citations omitted). "A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id.* The court may consider relevant evidence in adjudicating a factual attack on subject-matter jurisdiction. *Id.*

**DISCUSSION**

Mountainland moves to dismiss this action on the grounds that it is an arm of the state of Utah and is therefore entitled to immunity from a suit for money damages under the Eleventh Amendment. Stewart responds that Mountainland's motion was not timely filed, that Mountainland has not offered sufficient evidence to establish that is an arm of the state, and that Mountainland waived any claim to immunity by participating in the litigation until now. The court will address each of these arguments in turn.

I.   **Timeliness of Filing**

The court first turns to Stewart's argument that Mountainland's Motion must be denied because it was not timely filed. She points to Rule 12(b)—which provides that a "motion asserting any of [the defenses listed in Rule 12(b)] must be made before pleading if a responsive pleading is allowed"—and argues that because Mountainland filed an Answer (ECF No. 26) to the

Complaint, the present Motion must be denied as untimely. Mountainland responds by pointing to the fact that Stewart has filed an Amended Complaint (ECF No. 17). Mountainland argues that the filing of the Amended Complaint mooted Mountainland's Answer and effectively reset the clock for Rule 12(b) motions.

The Court agrees with Mountainland. "[I]t is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) (citations omitted). Stewart filed her Amended Complaint on August 5, 2020. This rendered the initial complaint "of no legal effect" and afforded Mountainland 21 days to file a responsive pleading or a motion to dismiss. *See* FED. R. CIV. P. 12(a)&(b). Mountainland filed the present Motion on August 14, 2020, well within this 21-day period. The court therefore concludes that the Motion was timely filed.

## II.     Eleventh Amendment Immunity

The Eleventh Amendment bars suits against states in federal court unless the state has waived immunity or Congress has properly abrogated it. *See Lapides v. Bd. of Regents of Univ. Sys. Of Ga.*, 535 U.S. 613, 618 (2002) (citations omitted); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996). Eleventh Amendment immunity extends to "arms of the state." *Id.* The Tenth Circuit has explained:

> To determine whether an entity is an arm of the state[,] "we engage in two general inquiries. [T]he court first examines the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state. Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing. The governmental entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury."

*Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000) (quoting *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574–75)) (second alteration in original). When engaging in these "general inquiries," courts examine four factors: "(1) the characterization of the governmental unit under state law; (2) the guidance and control exercised by the state over the governmental unit; (3) the degree of state funding received; and (4) the governmental unit's ability to issue bonds and levy taxes on its own behalf." *Id.* at 1166 (citations omitted). While courts consider these factors, the overarching consideration is the "fundamental distinction . . . between alter egos or instrumentalities of states on the one hand, and political subdivisions such as cities and counties on the other." *Id.* at 1170.

### A. Evidence that Mountainland is an Arm of the State

Stewart concedes that the first factor above is satisfied because Mountainland is a member of the Utah System of Technical Colleges and of the Utah System of Higher Education. *See* UTAH CODE §§ 53B-2a-101, 105. But she argues that Mountainland has not offered sufficient evidence to establish the final three factors. Specifically, Stewart argues that Mountainland provides no evidence regarding how much control the state exercises over Mountainland's budgets, staffing, or curriculum, how Mountainland's board is appointed, or what percentage of Mountainland's funding comes from the state as opposed to other sources.

The court disagrees and finds that Mountainland has offered sufficient evidence as to the contested factors. In its Motion, Mountainland cites to the relevant sections of Utah Code that outline how Mountainland's board is appointed (the majority of its members are appointed by the Governor with the advice and consent of the Utah Senate, *see id.* § 53B-2a-108) and how its budget is to be submitted for approval by the state. *Id.* § 53B-7-101. In short, Mountainland is governed and funded in the same way Utah's universities and colleges are governed and funded. The Tenth

Circuit has held consistently and repeatedly that state universities and colleges are arms of their respective states, including those in Utah. *See, e.g., Watson*, 75 F.3d at 574–77 (University of Utah and its medical center held to be arms of the state); *Innes v. Kan. State Univ. (In re Innes)*, 184 F.3d 1275, 1278 (10th Cir. 1999) (Kansas State University held to be arm of Kansas); *Univ. of Tex. at Austin v. Vratil*, 96 F.3d 1337, 1340 (10th Cir. 1996) (University of Texas held to be arm of Texas); *Seibert v. State of Okla. Ex rel. Univ. of Okla. Health Scis. Ctr.*, 867 F.2d 591, 594 (10th Cir. 1989), *overruled on other grounds by Fed. Lands Legal Consortium ex rel. Robart Estate v. U.S.*, 195 F.3d 1190 (10th Cir. 1999) (University of Oklahoma Health Sciences Center held to be arm of Oklahoma).

In holding that a Colorado community college was an arm of the state, the Tenth Circuit in *Sturdevant* explained:

> Because of the open-ended nature of the arm-of-the-state analysis, it is easy to become caught up in the minutiae of state law, such as <u>the extent of control over the Board by the executive and legislature</u> . . . <u>and the proportional sources of the Board's funding</u>. These details, however, must not eclipse a fundamental distinction . . . between alter egos or instrumentalities of states on the one hand, and political subdivisions such as cities and counties on the other.

218 F.3d at 1170 (emphasis added). Instead of engaging in a detailed exploration of these minutiae, the *Sturdevant* court pointed to the several occasions, cited above, on which the Tenth Circuit had found state universities and colleges to be arms of the state. This holds true even when the entity in question received less than five percent of its operating income from the state. *Watson*, 75 F.3d at 575–76 (finding the University of Utah Medical Center to be an arm of the state). The inverse is also true—the *Sturdevant* court noted that the Tenth Circuit has consistently found local school districts not to be arms of the state, even when they were "largely dependent on state funding and

6

subject to state control." 218 F.3d at 1170. Thus, while state control and funding are factors courts may consider, they do not cause courts to depart from the general rule that state universities and colleges are arms of the state and local school districts are not. Based on the foregoing, the court concludes that Mountainland is an arm of the state and is therefore shielded from suit in this court under the Eleventh Amendment.

### B. Waiver of Immunity

Despite its Eleventh Amendment protection, Mountainland may still be amenable to suit if it waives its immunity. States may waive their Eleventh Amendment immunity by choosing to invoke the jurisdiction of a federal court (by, for example, removing a state-court case to federal court) or by otherwise "unequivocally" expressing their consent to submit to federal jurisdiction. *Arbogast v. Kan. Dep't of Labor*, 789 F.3d 1174, 1182 (10th Cir. 2015). Stewart argues that by participating in the litigation to this point, including by responding to Stewart's charge with the EEOC, answering Stewart's initial Complaint, and by failing to otherwise notify Stewart of its planned immunity defense during the attorney planning meeting, the discovery process or in its Rule 26 disclosures, Mountainland unequivocally manifested its intent to waive its immunity and litigate this case on the merits. Mountainland responds that its answer to the EEOC charge is irrelevant to the question of immunity in this case. It also contends that the other actions Stewart cites as evidence of Mountainland's waiver of immunity were rendered moot when Stewart filed her amended complaint.

The court agrees with Mountainland that its answer to Stewart's EEOC charge is not relevant to the question of waiver. The court disagrees, however, that Stewart's Amended Complaint rendered moot all of Mountainland's conduct prior to the filing of the Amended Complaint. While it is true, as explained above, that the Amended Complaint mooted

Mountainland's initial Answer and Motion to Dismiss, it does not follow that Mountainland's litigation conduct to that point was also somehow erased. The question of whether Mountainland, through Mountainland's conduct, unequivocally evinced an intent to waive its Eleventh Amendment immunity presents a question of fact. Evidence of such intent is not wiped away because Stewart filed an amended complaint.[2] However, as explained below, the court is not persuaded that Mountainland's conduct in this case sufficed to constitute a waiver of its Eleventh Amendment immunity.

Stewart cites *Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 758 (9th Cir. 1999) for the proposition that a state waives its Eleventh Amendment immunity by participating in litigation in a such a way that is "incompatible with an intent to preserve the immunity." The Ninth Circuit in that case wrote:

> We see no valid reason why a party should belatedly be permitted to assert Eleventh Amendment immunity. A party knows whether it purports to be an "arm of the state," and is capable of disclosing early in the proceedings whether it objects to having the matter heard in federal court. Timely disclosure provides fair warning to the plaintiff, who can amend the complaint, dismiss the action and refile it in state court, or request a prompt ruling on the Eleventh Amendment defense before the parties and the court have invested substantial resources in the case . . . . If a state or state agency elects to defend on the merits in federal court, it should be held to that choice the same as any other litigant.

*Id.* at 757–58 (emphasis added). The *Hill* court went on to hold that the defendant in that case waived its Eleventh Amendment immunity by substantially participating in the litigation and waiting to assert its immunity defense until the first day of trial. *Id.* at 763.

---

[2] For example, in the scenario where a state clearly waives immunity by removing a case to federal court, the fact that a plaintiff later amends her complaint would have no bearing on the state's prior unequivocal waiver of immunity (its decision to remove to federal court).

8

But the Ninth Circuit's decision in *Hill* is not binding on this court, and even if it were binding, the facts of this case are clearly different from those in *Hill*. Here, Mountainland filed an initial motion to dismiss (ECF No. 13), raising its immunity defense just two months after it filed its initial Answer. At that time, all that had transpired in the case were an attorney planning meeting and the entry of an initial scheduling order. *See* ECF Nos. 11 & 12. Other than initial disclosures, no discovery had taken place. Rather than waiting for the court to rule on Mountainland's first motion to dismiss, Stewart amended her complaint to add claims under the Rehabilitation Act, which are not subject to Eleventh Amendment immunity. While Mountainland could have filed its motion to dismiss two months earlier, any potential prejudice to Stewart was remedied when she filed her Amended Complaint.

The Court is also unpersuaded by Stewart's waiver argument and the Ninth Circuit's decision in *Hill* because the weight of authority, including Tenth Circuit precedent, holds that a state does not waive Eleventh Amendment immunity by failing to raise it early in the litigation process. In *Cisneros v. Wilson*, 226 F.3d 1113, 1117 (10th Cir. 2000), *abrogated on other grounds by Bd. of Trs. Of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001), the Tenth Circuit considered the defendant's Eleventh Amendment immunity defense even though it was not raised for the first time until oral argument on appeal. It explained that even under such circumstances, "Supreme Court precedent and decisions of this court establish that deciding the Eleventh Amendment issue is not beyond our jurisdictional grasp and that the issue should be decided." *Id.; see also Richins v. Indus. Const., Inc.*, 502 F.2d 1051, 1056 (10th Cir. 1974) (posing the question, "[c]an the Eleventh Amendment be waived by the attorney general of the state entering an appearance and litigating in the case?" and answering that "it cannot . . . absent some extraordinarily effective waiver."). The *Cisneros* court cited the Supreme Court's decisions in *Ford Motor Co. v. Dep't of*

9

*Treasury*, 323 U.S. 459, 466–67 (1945), *overruled on other grounds by Lapides*, 535 U.S. 613; and *Edelman v. Jordan*, 415 U.S. 651, 677–678 (1974), both of which concluded that a state may raise an Eleventh Amendment immunity defense for the first time on appeal. Neither of the defendants in those cases were deemed to have waived their Eleventh Amendment immunity by virtue of having defended the case on its merits.[3]

Finally, the court's conclusion that Mountainland did not waive its Eleventh Amendment Immunity is also supported by the fact that a state's Eleventh Amendment immunity effectively acts as a bar to a federal court's subject-matter jurisdiction; therefore, the issue may be raised at any point in the litigation. FED. R. CIV. P. 12(h)(3). Previously, there existed some confusion in the Tenth Circuit over whether a state's Eleventh Amendment immunity deprives a federal court of subject-matter jurisdiction or whether it merely acts as an affirmative defense. *See Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558 (10th Cir. 2000) ("We have noted 'it is unclear whether the Supreme Court would consider Eleventh Amendment immunity to be an affirmative defense or a jurisdictional bar (which nonetheless can be waived) . . . .'" (quoting *Archuleta v. Lacuesta*, 131 F.3d 1359, 1362 (10th Cir. 1997)). The tension existed because, unlike subject-matter jurisdiction, Eleventh Amendment immunity may be waived and courts need not raise it sua sponte. *Id.* But the Tenth Circuit resolved this tension more than two decades ago by stating that "*once effectively asserted* such immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Id.*

---

[3] At oral argument, counsel for Mountainland admitted that Mountainland's failure to raise an Eleventh Amendment immunity defense earlier was due to an oversight by counsel. Thus, even if a state could waive immunity by participating in litigation and defending on the merits, it is doubtful that a mistake by a staff attorney in the Utah Attorney General's office would suffice to constitute the unequivocal expression of consent required to waive the state of Utah's Eleventh Amendment immunity. *See, e.g.*, *Ford Motor*, 323 U.S. at 469 (explaining that Indiana Attorney General was unauthorized to waive that state's immunity).

at 559. This suggests that while courts need not raise the issue sua sponte, they may entertain a motion raising Eleventh Amendment immunity at any point in the litigation.

## CONCLUSION AND ORDER

For the foregoing reasons, the court GRANTS Defendant's Motion to Dismiss. Plaintiff's first and second causes of action are DISMISSED WITH PREJUDICE. Plaintiff's third and fourth causes of action remain pending before the court.

DATED March 2, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge